<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

August 9, 2021

Al'Rashon Brown
Register No. 71185-050
USP Canaan, P.O. Box 300
Waymart, PA 18472
*Pro Se Defendant*

Catherine Murphy, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for Plaintiff*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:** *United States v. Al'Rashon Brown*
**Criminal Action No. 18-77 (SDW)**

Litigants:

Before this Court is Defendant Al'Rashon Brown's ("Defendant") Motion for Assistance of Counsel in Filing for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 23.) This Court, having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion and his request for compassionate release.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

On February 16, 2018, Defendant pleaded guilty to a one-count Information charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (D.E. 12, 14.) On June 18, 2018, this Court sentenced Defendant to 87 months of imprisonment. (D.E. 19.) Defendant is currently incarcerated at the United States Penitentiary, Canaan ("USP Canaan") in Waymart, Pennsylvania.

In August 2020, Defendant applied to the warden of USP Canaan for compassionate release because of his alleged medical conditions, including a prior gunshot wound to his head, bullet fragments in his chest, and post-traumatic stress disorder (PTSD), as well as a need to help his mother take care of his seven-year-old daughter. (*See* D.E. 23-1 at 3–4.) On September 2, 2020,

the Bureau of Prisons (BOP) denied Defendant's request after determining that Defendant was "not experiencing a deteriorating mental or physical health condition that substantially diminishes [his] ability to function in a correctional facility." (*Id.* at 5.) On September 10, 2020, Defendant filed a Request for Administrative Remedy, which the BOP denied on September 28, 2020. (*See id.* at 6–8.) Defendant appealed the BOP's decision on October 1, 2020, arguing that the decision did not sufficiently factor in his PTSD and damage to his body from prior gunshot wounds. (*Id.* at 9.) The BOP denied this appeal on January 26, 2021. (*Id.* at 11.)

On May 27, 2021, Defendant filed the instant Motion for Assistance of Counsel in this Court, citing his inability to "truly express[] in written words to the court about his medical condition and research upon it." (D.E. 23 at 3.) The Office of the Federal Public Defender for the District of New Jersey reviewed Defendant's *pro se* motion and opted not to file an appearance. (*See* D.E. 24 at 1 n.1.) The Government filed its opposition on June 18, 2021, and Defendant thereafter filed his reply. (D.E. 24, 25.)

## DISCUSSION

### A.

Directly before this Court is Defendant's motion for the appointment of counsel. (D.E. 23; *see* D.E. 25.) Defendant argues that he is entitled to assistance of counsel because of his "lack of legal knowledge" and his lack of access to the prison library and the Internet, which has prevented him from finding relevant case law or from explaining "why his medical condition meets the extraordinary and compelling reasons" standard under the First Step Act. (*See* D.E. 25 at 1–2, 5.)

Although there is no constitutional right to appointed counsel in civil or post-conviction proceedings, a court has discretion to appoint counsel under 28 U.S.C. § 1915(e)(1). *See Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997). In deciding whether to appoint counsel, the court must first determine whether the defendant's claim "has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (quotation omitted). If it does, the court must then consider the following *Tabron* factors:

> (1) the defendant's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the defendant to pursue the investigation; (4) the defendant's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*United States v. Gonzalez*, Crim. No. 02-446-01, 2021 WL 1088258, at *4 (E.D. Pa. Mar. 22, 2021) (citing *Tabron*, 6 F.3d at 155–57). The Third Circuit has "cautioned that courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery v. Pinchak*, 294 F. 3d 492, 499 (3d Cir. 2002) (citation omitted).

Here, Defendant has shown that his claim may have some merit in fact and law. Although a district court generally has limited authority to modify a federally-imposed sentence once it

commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. Under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. With respect to the procedural requirements, this Court may only grant a motion for reduction of sentence under the FSA if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In this case, Defendant has exhausted his administrative remedies. (*See* D.E. 23 at 6; D.E. 24 at 2.) Regarding the compelling and extraordinary reasons for release, Defendant states that he suffers from several medical conditions, including gunshot fragments in his chest and a past COVID-19 diagnosis. (*See* D.E. 23 at 2.)

However, in applying the *Tabron* factors, this Court finds that appointment of counsel should be denied. First, Defendant has properly filed a motion for appointment of counsel and adequately set forth his legal and factual arguments, including the alleged failure of USP Canaan to provide him with adequate medical care. (*See* D.E. 23 at 2–3.) His two briefs detail his medical conditions and treatments, and any relevant information not included in the briefs are included in the medical records that are before this Court. (*See* D.E. 23, 25.) He has thereby demonstrated his ability to make his own case and this Court has all the information it needs to reach the correct decision on whether Defendant is entitled to compassionate release. The second, third, fifth, and sixth *Tabron* factors also weigh against appointment of counsel because the factual and legal issues of a Motion for Compassionate Release are not complex, no investigation is needed, credibility is not at issue, and expert testimony is not required. *See Gonzalez*, 2021 WL 1088258, at *5. The only factor to weigh in Defendant's favor is the fourth, because Defendant is currently incarcerated, and this Court therefore assumes that he cannot retain counsel on his own behalf. Weighing the factors together, this Court will deny Defendant's motion.

B.

Implicit in Defendant's Motion for Assistance of Counsel is a request for compassionate release. Thus, this Court will also address the substance of that claim. Under the FSA, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

3

Defendant is twenty-seven years old and contends that complications from his past gunshot wounds and previous COVID-19 illness establish compelling and extraordinary reasons justifying his release. (*See* D.E. 23 at 2–3; Govt. Ex. C at 1.) "A prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020). Although this Court is sympathetic to Defendant's concerns, his circumstances satisfy neither criterion.

First, Defendant does not have a medical condition that places him at a uniquely high risk of severe illness should he contract COVID-19. The Centers for Disease Control and Prevention (CDC) do not include complications from gunshot wounds, or physical trauma in general, on their list of underlying medical conditions that increase the risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions* (last updated May 13, 2021), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. Multiple courts in this district have denied compassionate release to inmates suffering from gunshot injuries and/or other medical conditions that the CDC does not associate with increased risk for severe illness from COVID-19. *See, e.g.*, *United States v. Grier*, Crim. No. 18-652, 2021 WL 791842, at *4 (D.N.J. Feb. 26, 2021) (noting that defendant's pain from a past gunshot wound, even when combined with other health issues, did not present an extraordinary and compelling reason for release); *United States v. Mata*, Crim No. 15-153, 2020 WL 6580768, at *2, *4 (D.N.J. Nov. 9, 2020) (denying defendant's motion for compassionate release where defendant suffered from conditions not included in the CDC's list); *United States v. Hynes*, Crim. No. 18-222, 2020 WL 6060984, at *1, *4 (D.N.J. Oct. 14, 2020) (denying motion for compassionate release where defendant suffered from "ongoing pain, vomiting and gastrointestinal problems stemming from a gunshot injury" and other health issues). Although Defendant claims that he experiences ongoing health issues as a result of his prior gunshot wounds, including an increased risk of blood clots and ongoing migraines, his medical records do not substantiate the severity of his allegations. He has received regular medical treatment at USP Canaan, including warfarin upon his arrival and additional examination for clots and bleeding, with negative results. (*See* D.E. 23-1 at 3–4; Govt. Ex. C. at 34.) Defendant has also reported that his migraines improved with treatment. (*See* Govt. Ex. E at 8.)

Second, Defendant has already contracted and recovered from COVID-19 without suffering serious illness. (*See id.* at 18, 43, 56.) Courts in this district have routinely denied compassionate release to inmates who recovered from COVID-19 without severe illness. *See, e.g.*, *United States v. Young*, Crim. No. 17-413, 2021 WL 1961303, at *2–3 (D.N.J. May 17, 2021) (deciding that the defendant's purported medical conditions did not entitle him to compassionate release because he had already "contracted and recovered from COVID-19 without suffering serious illness"); *United States v. Reed*, Crim. No. 13-787-03, 2021 WL 631921, at *2–3 (D.N.J. Feb. 18, 2021) (denying a motion for compassionate release where the defendant "ha[d] already been infected with and recovered from COVID-19 without suffering severe illness"); *United States v. Bell*, Crim. No. 15-603, 2021 WL 303009, at *2–3 (D.N.J. Jan 29, 2021) (holding that defendant's fear of reinfection "d[id] not constitute extraordinary and compelling reasons warranting a grant of compassionate release").

4

Third, Defendant is fully vaccinated against COVID-19. (*See* Govt. Ex. E. at 60.) As of June 18, 2021, USP Canaan had fully vaccinated 168 staff members and 83% of its inmates. (D.E. 24 at 4.) Defendant's inoculation and the high vaccination rate at USP Canaan substantially reduce his risk of reinfection with COVID-19, and courts have routinely denied compassionate release to inmates in similar situations. *See, e.g.*, *United States v. Stewart*, Crim No. 08-346, 2021 WL 2134937, at *4 (D.N.J. May 25,2021) (holding that an inmate who had recovered from COVID-19 and was subsequently vaccinated was not eligible for compassionate release); *United States v. Roper*, Crim. No. 16-225, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) (deciding that an inmate's inoculation against COVID-19 and his prison's low infection rate meant that the inmate's risk was not an "extraordinary and compelling reason for his release"). Defendant has therefore not shown an "extraordinary and compelling" reason for release.

Even if this Court were to find that Defendant's health conditions constituted an extraordinary and compelling reason for release, it would still deny his request for early release because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against it. *See Hynes*, 2020 WL 6060984, at *3–4 (holding that, while defendant's health conditions presented an extraordinary and compelling reason for release, the sentencing factors weighed against compassionate release). This Court must ensure that, should Defendant's sentence be reduced, the reduced sentence still "reflect[s] the seriousness of the offense" and "promote[s] respect for the law." *See* 18 U.S.C. § 3553(a)(2)(A). Here, Defendant has ten adult criminal convictions, two of which are for unlawful possession of a weapon, including the instant offense. (*See* D.E. 24 at 14.) Defendant's criminal history also includes six convictions for possessing, manufacturing, or distributing controlled dangerous substances, and one for wandering/prowling to obtain controlled dangerous substances. (*See id.*) Furthermore, Defendant's current 87-month sentence is well within the Sentencing Guidelines range of 77 to 96 months' imprisonment for his offense, and he has approximately 28 months left to serve. (*See id.*) A reduction here would therefore create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing"). This Court will therefore deny Defendant's request for compassionate release.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion and his request for compassionate release are **DENIED**. An appropriate order follows.

                         ___/s/ Susan D. Wigenton_____
                         **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties